# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7578 | **DATE** | 7/2/2003 |
| **CASE TITLE** | Dennis J. Kutka vs. DMC Auto Transfer of Chicago, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP4(a)(2).

(10)  ■  [Other docket entry]   Enter memorandum opinion and order. Defendant's motion for summary judgment on all counts [21-1] is granted.

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 3 number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | JUL 0 3 2003 | |
| | Notified counsel by telephone. | date docketed | 34 |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | 7/2/2003 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| IS | courtroom deputy's initials | IS mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 JUL -2 PM 4: 22

Date/time received in
central Clerk's Office

**DOCKETED**

JUL 0 3 2003

DENNIS J. KUTKA, )
)
              Plaintiff, )    Case No. 00 C 7578
)
        v. )    Magistrate Judge
)      Martin C. Ashman
DMC AUTO TRANSFER )
OF CHICAGO, INC., )
)
            Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dennis Kutka filed a three-count employment discrimination complaint against

his current employer, defendant DMC Auto Transfer of Chicago, Inc. (DMC), alleging age

discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.

§ 621; disability or perceived disability in violation of the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12101; and retaliation under the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e (Title VII). DMC has moved for summary judgment on all counts of Kutka's

complaint.[1] For the following reasons, this Court grants Defendant's motion for summary

judgment on all counts.


## I.   Background

The following undisputed facts are taken from the parties' Local Rule 56.1 submissions

and supporting exhibits.

---

[1] The parties have consented to have this Court conduct any and all proceedings in this
case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

34

For nineteen years Dennis Kutka worked as a rail loader/unloader for a company not party to this lawsuit, MIS, and served as union steward for International Brotherhood of Teamsters Local 710 ("Local 710") while employed at MIS. In October of 1998, DMC acquired MIS. Both DMC and MIS are/were in the business of loading and unloading motor vehicles from rail cars at a Chicago facility. As part of its determination of who to hire from MIS, DMC conducted employee interviews. DMC also considered evaluations created by MIS managers reviewing the employees. DMC interviewed Kutka and discussed Kutka's past work performance with his prior managers. During this initial hire period, DMC decided not to hire Kutka. However, six weeks later, on or about November 22, 1998, DMC did hire Kutka as a personal favor to Michael Sweeney, the Business Agent for Local 710, subject to a thirty-day probationary period. A collective bargaining agreement between DMC and Local 710 governed the terms and conditions of employment. Effectively, the delayed hiring caused Kutka to lose his position on the seniority list because date of hire, as mandated by the collective bargaining agreement, establishes where one is positioned on the list. The seniority list is important because it determines order of employment, layoff and recall.[2]

On December 23, 1998, the day after the probationary period ended, Kutka filed union grievances and charges with Local 710 claiming that the seniority date he was given was a violation of the collective bargaining agreement, including discrimination based on age, disability and status as a former union steward. On March 19, 1999, the contractual union-management committee charged with deciding Kutka's grievance ruled against him. On

---

[2] The Court is concerned that DMC provided not only the dates of birth of its employees, but also their full names and social security numbers. Social security numbers are irrelevant to this case and, due to privacy concerns, should not have been disclosed.

February 25, 1999, Kutka filed another grievance with Local 710 as to his seniority date. The committee also ruled against him as to that grievance. On or about April 23, 1999, Kutka filed a charge with the National Labor Relations Board (NLRB) contesting his assignment and seniority. The NLRB dismissed that charge and denied Kutka's appeal of the dismissal. Finally, Kutka filed an EEOC charge on August 20, 1999, claiming DMC discriminated against him on the basis of age, disability, and in retaliation for filing grievances. On August 31, 2000, the EEOC determined that the evidence was "unlikely" to establish a violation of the ADA, ADEA, or Title VII. The EEOC issued Kutka a "right to sue" notice.

DMC claims it did not hire Kutka in October 1998 because of his interview and the managerial evaluation. In his personal interview, Kutka was rated a "3" on a one to four scale where four was the lowest rating and one was the highest possible score. On the manager's evaluation, Kutka was given a "4," again with four being the lowest possible score. Additionally, the managerial evaluation revealed that Kutka had been involved in one accident in 1984, was prone to absenteeism and was described by a manager as "very hard to get along with, hard to work with, [and] hostile at times."

### A.    ADEA Related Facts

Kutka was forty-seven years old at the time of DMC's decision not to hire him. DMC did hire younger employees who received similar or equivalent DMC interview and manager evaluation scores as Kutka. None of these younger employees had the same manager evaluation, scores and comments. DMC did re-hire forty-nine other people born the same year or later then Kutka. The record lacks these individuals' hire dates, positions, salaries or tenure.

## B.    ADA Related Facts

There are four "positions" or "jobs" that Kutka is qualified to perform at DMC: (1) Rail Loaders/unloaders, who drive the vehicles on and off the rail cars (2) New Vehicle Transporters or Shuttle Drivers, who transport new cars from a nearby auto manufacturing plant to the rail yard for loading; (3) Scanners, who electronically scan the bar codes on cars parked at the facility as well as those entering and exiting the facility; and (4) office and clerical positions.

On or about November 22, 1998, the day DMC hired Kutka, Kutka had a conversation with Lou Rittenhouse, president of DMC. According to Kutka, the conversation started with Rittenhouse informing Kutka that he would deny that the conversation ever took place. Significantly, Rittenhouse told Kutka that he had "a concern with [Kutka] and the ADA" and that he could not have Kutka work the shuttle or rail positions because of concerns about Kutka's back. Rittenhouse said that he could hire him on the scanning job, which Kutka accepted.

Kutka's various impairments include back discomfort, Hodgkin's disease, and an immune deficiency condition. As to his back condition, Kutka has received treatments consisting of medication, physical therapy and bed rest since 1987. Kutka visited Dr. Yoon and Dr. Ferguson seven times between the years of 1998-2001. Dr. Yoon stated that the plaintiff "walked in a very strange way." The only restriction Kutka's doctors placed on him was one limiting him to eight hours per shift. For his immune deficiency condition, Kutka receives monthly intravenous infusions of a blood protein.

Due to the yearly job bid, and in compliance with the collective bargaining agreement, Kutka was bumped from his position as a gate scanner in favor of an employee with more seniority. Consistent with the terms of the bargaining agreement, Kutka became a yard scanner.

- 4 -

On or about February 10, 1999, Kutka submitted a note from Dr. Ferguson stating that Kutka needed a position that required less standing, and that the shuttle position was his recommendation based on Kutka's suggestion. DMC did not transfer Kutka to the shuttle position.

### C.    Retaliation Related Facts

Kutka alleges that the DMC interviewers, Boyd Dickens and Kent Ramos, had knowledge of past grievances Kutka had filed against his former employer MIS. Those grievances include complaints to MIS alleging discrimination, denial of rights under FMLA, and for complaints that MIS violated his rights under the ADA. Kutka filed grievances while at MIS against his supervisor, complaining that his supervisor verbally abused, mistreated and made false allegations against him. Kutka asserts that DMC retaliated against him for filing grievances against MIS.

Moreover, there is a dispute as to Kutka's proper seniority date. Kutka claims that in retaliation for his complaints, DMC moved individuals ahead of him on the seniority list. DMC maintains that seniority date is established as date of hire, and that the composition of the seniority list reflects established policy.

## II.  Analysis

### A.  Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view all evidence, and draw all reasonable inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  When the non-moving party bears the burden of proof on an issue, however, he or she may not simply rest on the pleadings, but rather, must affirmatively set forth specific facts establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-26.

Summary judgment is proper where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  Thus, summary judgment motions must be analyzed in light of both the applicable substantive law and the question of whether a reasonable jury could return a verdict in the non-movant's favor. *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338, 1344 (7th Cir. 1988).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-movant party, there is no genuine issue or trial," and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. ADEA Claim**

There are two ways a plaintiff can avert summary judgment for the defendant in an employment discrimination case: by pointing to direct or circumstantial evidence of discriminatory motivation sufficient to create a triable issue of fact *or* by using the *McDonnell Douglas* indirect method of proof.[3] *Sheehan v. Daily Racing Forms, Inc.*, 104 F.3d 940, 940 (7th Cir. 1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Summary judgment is inappropriate if Kutka offers evidence from which an inference of discrimination can be drawn. Kutka does not specifically address which method he is proceeding under. Therefore, we will address his claims under both.

### 1. Evidence of Discriminatory Motivation Under the Direct Method of Proof

Under the direct method of proof the plaintiff must show either direct evidence of discriminatory intent by the employer or circumstantial evidence providing a basis for an inference of intentional discrimination. The Seventh Circuit has described direct evidence of proof as "essentially requir[ing] an admission by the decision maker that his actions were based on the prohibited animus." *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570, 574 (7th Cir. 2001) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (additional citations omitted). It has also held that "[r]emarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality." *Id.* (citing

---

[3] The *McDonnell Douglas* burden shifting formula has been adopted for use in age discrimination cases. *See Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 424 (7th Cir. 1989) (*quoting Oxman v. WLS-TV*, 846 F.2d 448, 452 (7th Cir. 1988)).

*Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001) (additional citations omitted)). Direct evidence is such that if believed by the trier of fact it will prove the particular fact in question without reliance on inference or presumption. *Walker*, 241 F.3d at 888 (quoting *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999)). Direct evidence of discriminatory intent is rarely found. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 141 (2000). This case is no exception; Kutka does not present any direct evidence of discriminatory intent relating to Kutka's age, let alone direct evidence sufficient to overcome DMC's motion for summary judgment.

Circumstantial evidence can be suspicious timing and ambiguous statements; or proof that similarly situated employees were treated differently; or proof that the employee was qualified and passed over for the job and the employer's reason for the different treatment was pretextual. *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001). Kutka has not pointed to any suspicious timing or statements, rather, he alleges that because three younger employees with similar interview scores were rehired, there is sufficient evidence to create an issue of fact as to whether DMC acted with discriminatory intent. Because the third type of evidence is substantially the same as evidence required in the *McDonnell Douglas* analysis and our discussion of the allegedly similarly situated employees mirrors our discussion below, we find that Plaintiff fails to meet these criteria for the same reasons discussed under the *McDonnell Douglas* analysis below. Because the hiring of three younger employees does not, on its own, demonstrate that DMC acted with discriminatory intent, the ADEA allegation cannot withstand defendant's motion for summary judgment under the direct method of proof.

## 2. The McDonnell Douglas Burden-shifting Method

Analysis of Kutka's allegations under the *McDonnell Douglas* burden-shifting formula also reveals that he is unable to satisfy his burden to demonstrate that a genuine issue of fact exists to overcome the DMC's motion for summary judgment. Under the *McDonnell Douglas* formula, the plaintiff carries the burden of establishing a prima facie case, which, in an ADEA case, requires the plaintiff to demonstrate that he: (1) is in the protected class of age forty or older; (2) was performing to the employer's legitimate expectations; (3) was subject to an adverse employment action; and (4) that similarly situated and substantially younger employees were treated more favorably. *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) (citations omitted). In a failure-to-hire case, the elements are similar, except for step two where the plaintiff must show that he was otherwise qualified for the position sought, and for step four where the plaintiff must show the employer hired a substantially younger worker instead. *C.f. Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001). Kutka's claim could be analyzed under either formulation, because if he had been hired when initially interviewed, he would have been higher on the seniority list. He is also claiming that younger workers were moved up the seniority list ahead of him.

If the plaintiff is able to establish a prima facie case, then the burden shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7th Cir. 2003). If the employer satisfies that burden, then the burden shifts back to the employee to show that the articulated reasons are pretextual. *Id.* Because Kutka does not create a genuine issue of material fact for the fourth elements of the prima facie case, his age discrimination claim does not survive summary judgment.

In addressing the fourth required prima facie element that similarly situated and substantially younger employees were treated more favorably (or were hired), Kutka asserts that three younger employees were similarly situated to him and rehired. To satisfy this element of the prima facie case, the plaintiff must show:

> that [he] is similarly situated with respect to performance, qualifications, and conduct. This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.

*Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (affirming grant of summary judgment for the defendant because the plaintiff failed to establish a prima facie case of age or sex discrimination) (quoting *Radue*, 219 F.3d at 617-18). The record reveals that each employee was not similarly situated to Kutka in terms of performance, qualifications, or conduct. Two of the employees are easily distinguished in that they had better manager evaluations. The third employee, and the only one presented with Kutka's same poor interview score and the lowest possible manager evaluation score, had not been suspended for an accident or described in manager evaluations as having attendance problems and being "very hard to get along with, hard to work with, [and] hostile at times." (DMC Rule 56.1 ¶ 13). These differentiating and mitigating circumstances are unique only to Kutka. For this reason, Kutka does not provide the necessary fourth element to establish a prima facie case.

Even if Kutka were to establish a prima facie case, DMC meets its burden in articulating a nondiscriminatory reason for the employment decision in question; namely that the managerial comments combined with the poor interview score caused DMC to believe that Kutka would not be a desirable employee. We come to this conclusion without being persuaded by DMC's

argument that it re-hired forty-nine people born the same year as Kutka or earlier. Because DMC provides no hire dates, positions, salaries or tenure for these older employees, this Court will not assume that these employees were hired before Kutka's complaints arose.

In any event, even if Kutka did establish a prima facie case, which this Court finds he does not, he does not successfully rebut DMC's non-discriminatory reasons for not hiring him or for placing him lower on the seniority list. In order to rebut DMC's reasons, Kutka must show that DMC did not believe its own reasons. *Schaffner*, 256 F.3d at 621 (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464-65 (7th Cir. 1986) (The employee's "perception of himself, however, is not relevant. It is the perception of the decision maker which is relevant."). Kutka may well believe that he was as qualified as the other employees that were hired because he points to deficiencies that the other applicants had, such as possibly not being able to pass a drug exam. He might also believe that he was entitled to a position at DMC. (*See* Pl. Rule 56.1(b)(3) Resp. at ¶ 15 ("Defendant did not allow Plaintiff to start work on October 24, 1998").) However, his beliefs are no more than conclusory allegations and speculation that are insufficient to defeat DMC's motion for summary judgment. *Fisher*, 139 F.3d at 1140. Kutka has not shown that DMC was more likely motivated by a discriminatory reason, nor has he shown that DMC's reasons are unworthy of credence. *See Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991). The Court is not a superpersonnel department that needs to question every business decision made by an employer. *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999).

Because no issue of material fact exists with regard to demonstrating that similarly situated employees were treated more favorably than Kutka or hired instead of Kutka, no prima

facie case of age discrimination exists. DMC's motion for summary judgment on the age discrimination claim is granted.

## C.    ADA Claim

The ADA prohibits discrimination on the basis of disability towards an otherwise qualified individual. There are two types of discrimination claims: disparate treatment claims and failure to accommodate claims. *Wright v. Ill. Dep't of Corr.*, 204 F.3d 727, 730 (7th Cir. 2000). Before discussing whether a prima facie case of these claims exists, Kutka must meet his "threshold burden" of establishing that he has a disability within the meaning of the ADA. *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). For the following reasons, Kutka does not have a disability as defined under the ADA.

The ADA provides three methods under which a plaintiff can demonstrate that he suffers from a "disability" as defined under the Act: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Kutka relies on the first and third definitions to state his claim, both of which require an, actual or perceived, impairment that substantially limits a major life activity. In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, the Supreme Court recently clarified the concepts of "major life activity" and "substantially limits." 534 U.S. 184, 198 (2002).[4] As the Seventh Circuit has noted, *Toyota Motor* raised the threshold level for an impairment to qualify as a

---

[4] Although *Toyota Motor* dealt with the question of when a disability substantially limited the major life activity of manual tasks, it is also applicable to other life activities. *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir. 2002). Neither party discussed or cited this case.

disability under the ADA. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 484 (7th Cir. 2002) ("the Court established a higher threshold for the statute than some had believed it contained"). *Toyota Motor* held that the proper inquiry to determine whether an impairment substantially limits a major life activity in the context of performing manual tasks is that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." 534 U.S. at 198. Moreover, the Court directed, "[t]he word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* at 197. Lastly, determining the impact a disability has on a major life activity is to be decided in a case-by-case manner. *Id.* at 198. This Court is not persuaded that a reasonable juror could conclude that Kutka suffered from an impairment that substantially limited a major life activity or that DMC regarded Kutka as suffering from such an impairment.

### 1.    Kutka's Claim That He is Disabled

Kutka alleges that a sequence of back-related problems qualify him as suffering from a disability as defined under the ADA. More specifically, Kutka alleges that his back problems qualify because they substantially limit his major life activities of walking and standing.[5]

The record indicates that a reasonable juror would not be able to find that Kutka is substantially limited in his ability to walk. His doctors have testified that he has no walking

---

[5] Contrary to Kutka's assertion in his brief, the condition does need to be permanent or long term. *Toyota Motor*, 534 U.S. at 196 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001)).

restrictions, and Kutka himself stated that his back condition does not limit his ability to walk.[6]

Notwithstanding this admission, Kutka argues that Dr. Yoon's statement in his deposition, stating

Kutka had a "very strange way of walking," qualifies Kutka as being disabled under the ADA.

Quite simply, this ambiguous statement is not sufficient to create a material issue of fact. Indeed,

*Toyota Motor* made clear that those impairments that interfere in only a minor way, if at all, do

not qualify as disabilities under the ADA. 534 U.S. at 197 (stating "the word 'substantial' thus

clearly precludes impairments that interfere in only a minor way with the performance of manual

tasks from qualifying as disabilities."). This Court finds that "walking in a strange way," without

additional evidence as to why this limits his ability to function, is an impairment that interferes in

only a minor way with the performance of activities central to daily life.

    Kutka's claim that back injuries substantially limit his ability to stand fails for the same

reason as his walking claim: it is not "substantially interfering" as defined under the ADA.

Kutka's evidence to support his standing impairment consists of medical treatment for his

discomfort and having problems standing for a prolonged period as a scanner. This is

insufficient evidence for a reasonable trier of fact to believe that Kutka's impairment reaches the

high threshold of significantly interfering with his activities central to his daily life. Moreover,

the Seventh Circuit confirmed that minor back problems are not necessarily disabilities under the

ADA. *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002) ("The number of Americans restricted

by back problems to light work is legion. They are not disabled."). Indeed, Kutka does not

present any daily life activities that are affected by his back condition.

---

[6] The following questions and answers took place during Kutka's deposition: "So, by that tells me you could do the scanning job, could you not, if it involved walking?" Answer: "I guess you would have to say yes."

Lastly, Kutka alleges that his immune deficiency condition caused by his treatment for lymphoma qualify him as having a disability under the ADA. Yet, he offers no limitations, other than hospitalization and monthly treatments, which substantially limit activities central to his daily life. For the same reasons as above, this claim does not qualify as a disability under the ADA. *See Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) ("Bald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity.") Because we find that Kutka was not disabled within the meaning of the ADA, we do not need to reach the issue of whether DMC reasonably accommodated his disability.[7]

### 2.    Kutka's "Regarded as" Claim

An individual is "regarded as" disabled when either: the covered entity mistakenly believes that the plaintiff has a physical impairment that substantially limits a major life activity *or* mistakenly believes that the actual, nonlimiting impairment substantially limits a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). Thus, DMC must have believed, no matter the reason for the belief, that Kutka suffered from an impairment that substantially limits a major life activity.[8]

---

[7] The Court notes that DMC did give Kutka a stool so he would not have to stand as much in his position of gate scanner. Additionally, the position Kutka desires of shuttle driver would appear to involve bending to enter and exit cars. An employer is not required to give an employee the job he requests as an accommodation, rather, any reasonable accommodation is sufficient. *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000).

[8] Although *Toyota Motor* did not address a "regarded as" claim, its analysis is controlling because determining what constitutes an impairment that substantially limits one or more of an individual's major life activities is the same under a "regarded as" claim or an actually disabled
(continued...)

Kutka's evidence that DMC regarded him as disabled centers around the alleged statement of Lou Rittenhouse, DMC's president. On November 22, 1998, the same day DMC decided to hire Kutka, Rittenhouse told Kutka that he had "a concern with [Kutka] and the ADA." Kutka argues that this statement, combined with the facts that DMC knew of Kutka's back problems and only offered Kutka a position as a gate scanner, demonstrates that DMC believed that Kutka was substantially limited in major life activities that required bending. Kutka argues that DMC's mistaken belief caused DMC to not offer Kutka any rail or shuttle positions, as they involved getting in and out of cars.

Under the *Toyota Motor* analysis Kutka would have to show that DMC believed that his inability to bend "prevents or severely restricts" him from bending in a long-term or permanent way. *See* 534 U.S. at 198. Major life activities include, but are not limited to: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

As *Toyota Motor* makes clear, determining whether impaired bending is a substantially limited life activity is a case-by-case inquiry. *See* 534 U.S. at 198. Kutka fails to present evidence sufficient to demonstrate a material issue of fact with respect to whether DMC regarded him as having a substantially limiting impairment because he had difficulty bending. Because DMC hired Kutka as a gate scanner, it is not reasonable to believe that DMC regarded Kutka as suffering from a substantially limiting life activity. The position of gate scanner requires Kutka to walk and stand, two activities that Kutka was capable of doing (even though he claims he is substantially limited in these activities). Moreover, the bending concern was made in context of

<hr>

[8](...continued)
claim. *See Mack*, 308 F.3d at 781.

getting in and out of cars as part of performing job tasks. Thus, the most DMC believed, according to Kutka's evidence, was that Kutka's impairment concerned restriction related to his job. There is no evidence that DMC believed Kutka was limited in tasks central to his daily life. *See Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002).

Considering that DMC regarded Kutka as well enough to stand, walk and sit, there is no evidence for a reasonable trier of fact to construe that DMC's comment meant that it believed that Kutka could not perform major life activities. The absence of evidence relevant to DMC's belief of Kutka's ability to perform major life activities is sufficient to grant summary judgment on behalf of DMC. *See Stein*, 284 F.3d at 726-27 (affirming grant of defendant's motion for summary judgment where plaintiff failed to support claim with evidence that impairment did substantially limit major life activities). Kutka's evidence is entirely related to his job, leaving no evidence for a reasonable jury to infer that DMC believed that Kutka's limitations extended to tasks central to his daily life. *See id.*

Moreover, even when an employer admits that it regarded the plaintiff as having a disability, it does not necessarily follow that the employer regarded the plaintiff as having a disability as defined under the ADA. *See Wright*, 204 F.3d at 732. In *Wright* the department answered "yes" to an interrogatory asking whether it regarded the plaintiff's ankle condition to be a disability. Despite this admission, the Seventh Circuit held that the department's actions, including having plaintiff successfully complete a rigorous five-step physical agility test, demonstrated that the defendant did not regard the plaintiff as having a disability as defined under the ADA. *Id.* at 731-33. Like in *Wright*, even if Rittenhouse's statement is construed to show that DMC believed Kutka to be disabled, its actions demonstrate that it did not consider

him disabled as defined under the ADA. DMC's actions, by hiring Kutka as a gate scanner after these alleged comments were made, show that DMC believed that Kutka could perform the activities required to be a gate scanner, including walking and standing. It follows that if DMC believed Kutka could perform these functions, it certainly believed that Kutka did not have an impairment that substantially limited any major life activity.

Additionally, Kutka is not impaired from performing the major life activity of working. When the major life activity of working is alleged the plaintiff must demonstrate that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506 (7th Cir. 1998) (quoting *Best v. Shell Oil Co.,* 107 F.3d 544, 548 (7th Cir. 1997)). Further, the inability to work a single job does not constitute a substantial limitation in the major life activity of working. *Sutton,* 527 U.S. at 491. "[T]he impairment must substantially limit employment generally." *Stein,* 284 F.3d at 725 (quoting *Contreras v. Suncast Corp.,* 237 F.3d 756, 762 (7th Cir. 2001)); *see also Moore,* 221 F.3d at 953 (noting that plaintiff's ability to find a job is evidence that plaintiff is not substantially limited in the major life activity of working).

In *EEOC v. Rockwell Int'l Corp.,* the court granted summary judgment for the defendant on the plaintiff's regarded as claim where the plaintiff failed to present evidence of the extent of jobs having requirements that it claimed job applicants were unable to perform within the geographic area or more generally. 60 F. Supp. 2d 791 (N.D. Ill. 1999), *aff'd* 243 F.3d 1012 (7th Cir. 2001). We are presented with a similar scenario as in *Rockwell.* Kutka relies on an alleged statement made by Rittenhouse to Kutka: that "[Kutka's] back injury prevented him from

- 18 -

working any rail or shuttle position for DMC." Even when accepting that Rittenhouse made this statement, as we must at the summary judgment stage, the statement is not sufficient to demonstrate a denial of a broad range of jobs for Kutka. The statement only precludes Kutka from two jobs. Like in *Rockwell*, Kutka does not present evidence establishing that DMC precluded him from a broad class of jobs. While a plaintiff does not need "to establish a precise percentage of jobs that defendant's perception would have precluded [plaintiff] from performing," the plaintiff should set forth some evidence by which the court can determine "'general guideposts, such as whether [the perceived] impairment forecloses [plaintiff] from accepting a few, many, or most of the jobs in a particular class or in a broad range of classes."' *Id.* at 799 (quoting *Skorup v. Modern Door Corp.*, 153 F.3d 512, 515 (7th Cir. 1998)). Without such evidence, it is not reasonable to conclude that Kutka was precluded from a broad range of jobs.[9] For these reasons, this Court finds that Kutka does not present sufficient evidence to overcome summary judgment on the basis that DMC regarded Kutka as substantially limited in even one major life activity.

Because Kutka does not provide enough evidence for a trier of fact to reasonably believe that Kutka actually suffered from a disability as defined under the ADA, or that DMC regarded Kutka as suffering from such a disability, DMC's motion for summary judgment on this count is granted.

---

[9] The fact that Kutka is currently employed by DMC in a job that he is qualified for also weighs against a finding that DMC regarded him as being substantially limited in the major life activity of working.

### D.     Retaliation Claim

A plaintiff can assert a viable claim for retaliation even if the underlying disability claim fails. *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1119 (S.D. Ill. 2001). There are two methods for a plaintiff to defeat summary judgment when alleging retaliation: (1) direct evidence approach or (2) the *McDonnell Douglas* burden-shifting method as applied to the retaliation context. *Stone v. Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Kutka fails to establish that a material fact exists under either theory.

### 1.     Retaliation Claim for Grievances Filed Against MIS

#### a.     Direct evidence

Kutka claims that DMC retaliated against Kutka for the grievances he filed while at MIS, for exercising his rights under the ADA and for requesting an accommodation. Kutka does not present sufficient direct evidence to substantiate this claim. Failing to overcome summary judgment through the direct evidence method is not uncommon. *Radue*, 219 F.3d at 616 ("[d]irect evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus").

> Direct evidence is evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption. If the evidence consists of isolated statements, those statements should be causally related to the . . . decision making process, for direct evidence relate[s] to the motivation of the decisionmaker responsible for the contested decision. Remarks and other evidence that reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality.

*Walker*, 241 F.3d at 888 (alteration in original) (quoting *Miller*, 168 F.3d at 312). Kutka asserts his conversation with Lou Rittenhouse on November 22, 1998, is sufficient direct evidence to create a material dispute of fact that he was not hired because of his prior grievances to MIS. In that conversation, Rittenhouse stated to Kutka that he had "concerns" about Kutka and the ADA.

This conversation is not sufficient direct evidence to demonstrate a retaliatory animus. Kutka points to no evidence to suggest that DMC even knew about Kutka's grievances while at MIS. Even assuming that DMC had knowledge, it is still insufficient because having "concerns" about Kutka and the ADA requires an inference or presumption that this concern went to the decision making process of not hiring Kutka in October of 1998.[10] *See Miller*, 168 F.3d at 312 (where court found in ADEA case that employer's comment of "[a]lways see if a person's best years are ahead of him or behind him" was not sufficient direct evidence to overcome summary judgment when there was little or no evidence that the statement was actually used in reference to the "specific employment decision in question"). The conversation does not reveal, on its face, that Kutka was being evaluated on the forbidden criteria of a disability as defined under the ADA, only that there were "concerns" about the ADA. What these concerns were or when they were a factor in evaluating Kutka requires inferences that this Court cannot make when proceeding under the direct evidence analysis. For this reason, it is not sufficient to constitute direct evidence of retaliation.

---

[10] In fact, the comment was made during a conversation that resulted in Kutka being hired.

b.    McDonnell Douglas

To establish a prima facie case of retaliation under the burden-shifting approach, plaintiff

must show that: (1) he engaged in a statutorily protected activity; (2) he met his employer's

expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably

than any other similarly situated employee who did not engage in such protected activity. *Stone*,

281 F.3d at 644; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

Kutka has not met his burden of creating a material fact as to the last element of the prima

facie case. Kutka alleges a series of retaliatory actions including: refusing to hire him in October

of 1998, giving him a November 22, 1998 seniority date, placing other employees ahead of him

on the seniority list, and calling him into work and then sending him home without being able to

work.

Under the *McDonnell Douglas* approach, the plaintiff is required to show that after filing

the discrimination charge only he, and not any similarly situated employee who did not file a

charge, was subjected to an adverse employment action. *Stone*, 281 F.3d at 644. Kutka fails to

meet this requirement for any of his allegations.[11]

Kutka claims that DMC retaliated against him for grievances filed against MIS and for

his time spent as a union steward. As to his status as a former union steward, Kutka admits that

he has no evidence to support this retaliation claim against DMC.[12] And, even taking as true that

[11] As explained in the ADEA analysis, the employees who were hired in October of 1998
were not similarly situated.

[12] The following questions and answers took place during Kutka's deposition: "What
facts do you have that would indicate to you that they discriminated against you because you
were a union steward?" Kutka answered: "I may not have any facts about the fact that they
discriminated because I was a union steward." Question: "You say you may, but you don't have
(continued...)

- 22 -

DMC knew about the employment and discrimination grievances made to and about MIS, Kutka fails to present similarly situated employees who (1) did not file grievances and requests for accommodation with MIS but (2) were hired by DMC. Without a similarly situated employee, summary judgment must be granted in favor of DMC. *See Stone*, 281 F.3d at 644. Moreover, DMC has presented its non-discriminatory reasons for not hiring Kutka.[13] *Id.* ("If the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment.")

### 2. Retaliation Claim for Grievances Filed Against DMC

Kutka's allegation of retaliation for the grievances made on December 23, 1998, fail for the same reason as above: Kutka does not provide a similarly situated employee who was treated differently when not filing a grievance.

Kutka claims the adverse employment action he suffered for the grievances filed against DMC was the placing of new employees ahead of him on the seniority list and in not allowing him to work a few days in March of 1999. Both of these adverse employment actions stem from DMC's use of the seniority list. However, the retaliatory actions could not be based on the seniority list issues because the seniority list is formulated by date of hire, and Kutka failed to demonstrate how DMC did not follow this policy in setting the list. In fact, Kutka does present one employee, Molly Karasek, who was placed ahead of Kutka, and ahead of several others, on

---

[12](...continued)
it, right." Kutka answered: "Right."

[13] As explained in the ADEA analysis, managerial comments combined with the poor interview score caused DMC to believe that Kutka would not be a desirable employee.

the seniority list even though her date of hire was technically January 8, 1999. This exception was provided because Karasek was pregnant when interviewed six weeks earlier and could not start work at an earlier date. We will not regard a pregnant employee unable to work when she was interviewed to be similarly situated to the defendant. Thus, DMC simply cannot be retaliating against Kutka when it is utilizing a seniority list established before Kutka's grievances to DMC.

### III. Conclusion

For the above reasons, we find that DMC is entitled to summary judgment on all three counts of Kutka's complaint. Plaintiff presented no evidence sufficient to create a material issue of fact. Accordingly, this Court grants summary judgment for DMC.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** July 2, 2003.

Copies have been mailed to:

ARTHUR R. EHRLICH, Esq.
JONATHAN C. GOLDMAN, Esq.
Goldman & Ehrlich
19 South LaSalle Street
Suite 1500
Chicago, IL 60603

STEPHEN M. SILVESTRI, Esq.
STEFAN JAN MARCULEWICZ, Esq..
Miles & Stockbridge, P.C.
10 Light Street
Baltimore, MD 21202

TIMOTHY A. WOLFE, Esq.
Meckler Bulger & Tilson
123 North Wacker Drive
Suite 1800
Chicago, IL 60606

Attorneys for Plaintiff

Attorneys for Defendant